**MERCK & CO., Inc., et al. v. MARZALL.**

No. 11125.

United States Court of Appeals
District of Columbia Circuit.

Argued March 27, 1952.

Decided May 29, 1952.

Richard K. Stevens, Washington, D. C., with whom Robert E. Watkins and Ells-

14. The District Court did not find this to be the fact, and indeed made no finding with respect to it.

worth H. Mosher, Washington, D. C., were on the brief, for appellants.

Clarence W. Moore, United States Patent Office, Washington, D. C., with whom E. L. Reynolds, Solicitor, United States Patent Office, Washington, D. C., was on the brief, for appellee.

Before CLARK, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a patent case under R.S. § 4915, 35 U.S.C.A. § 63. The application to the Patent Office sought to patent a chemical compound known as thiamin mononitrate, represented by the empirical formula $C_{12}H_{17}O_4N_5S$. The Patent Office considered that this compound was disclosed by the prior patent to Williams, et al., No. 2,328,-594, issued September 7, 1943. After a trial the District Court made similar findings and dismissed the complaint.

The testimony indicates that plaintiffs-appellants have made a substantial contribution to the art by isolating the mononitrate of thiamin and putting it into commercial production. However, this is not an application for a process patent. We are dealing solely with an application for a patent on the compound itself. Such an application must be denied if there has been any prior disclosure of the compound, even though no practical means for its isolation or manufacture was previously known. R.S. § 4886, 35 U.S.C.A. § 31; Eastman Kodak Co. v. Coe, 78 U.S.App. D.C. 403, 135 F.2d 836.

The patent to Williams by its terms "relates to methods by which vitamin $B_1$ [thiamin] and kindred compounds may be synthesized. * * * An object of the invention is to provide synthetic vitamin $B_1$, its salts and related compounds having the essential physiological properties thereof." Application, p. 1, column 1. While the patent to Williams is for a process, not a compound, its disclosures are important as showing what compounds were known to the art at the time of the present application. Claims 9 and 10 of the Williams patent describe antineuritic compounds having stated structural formulae; both parties agree that these compounds may properly be termed the monoacetate of thiamin (Claim 9) and the monobromide of thiamin (Claim 10). To this extent Williams admittedly discloses the existence of monosalts of thiamin.

As to Claim 8 of the Williams patent, there is controversy. That claim is as follows:

"8. The process of producing antineuritic compounds which comprises reacting an ester of the group having the formulae

$$N\!=\!=\!C\!-\!\!-\!NH_2$$

and

$$N\!=\!=\!C\!-\!\!-\!NH_2HX^1$$

in which X and $X^1$ are selected from the group consisting of the halide, acetate, lactate, benzoate, nitrate, phosphate and sulphate radicles, with 4-methyl-5-$\beta$-hydroxy-ethyl thiazole."

From the text of the Williams patent it appears that the chemical structures illustrated above are pyrimethyl groups, and that the crux of Williams' invention is the coupling of such a pyrimethyl group with a thiazole group. It will be further noted that Claim 8 requires certain additions to be made to the pyrimethyl group, as indicated by the symbols X and $X^1$. A nitrate radicle is specifically contemplated as a possible member of the class represented by these symbols. Clearly, then, Claim 8 discloses the possibility of a nitrate compound of thiamin. True, that claim does not specifically refer to monosalts; but neither does it refer to di-salts or any other restricted category. In terms it contemplates a variety of thiamin com-

pounds which will contain "the halide, acetate, lactate, benzoate, nitrate, phosphate and sulphate radicles." In fact, Williams says that the acid radicle "may be varied almost at will." Williams' application, p. 7, column 2, lines 42–57. The nitrate radicle is, of course, an acid radicle.

Comparison of chemical structures also reveals the extent of the disclosures made by Williams. The structure of thiamin mononitrate, as set forth by plaintiffs-appellants, is the homologue of that of thiamin monobromide, as set forth by Williams.[1] Both structures represent the coupling of moieties revealed by Williams.[2]

We think the Patent Office and the District Court correctly viewed the Williams disclosures as including the mononitrate of thiamin, the substance which plaintiffs-appellants seek to patent. The judgment of the District Court will accordingly be

Affirmed.

1. Claim 10 of Williams shows a monobromide having the structure:

Plaintiffs-appellants, in their exhibits numbered 2 and 3 in the trial court, show a mononitrate having the structure:

2. A witness called by plaintiffs-appellants testified on cross-examination:

"Q. Now, wouldn't the skilled organic chemist, upon being shown the structural formula indicated opposite line 20 on page 8 [of the Williams patent, i. e., the structural formula appearing in Claim 8 of Williams] and told that that is a reactant to be reacted with 4-methyl-5-beta-hydroxy-ethyl-thiazole, and upon being further told that the X of that first compound could be nitrate, know that the expected resulting compound would be thiamin mononitrate? A. He would be led to believe that that is the case.

"Q. His knowledge of structural formulae and of organic chemistry would lead him to that conclusion? A. Yes.

\* \* \* \* \* \*

"Q. Now, with thiamin monobromide at hand, would there have been any difficulty for you as an organic chemist to prepare the thiamin mononitrate? A. I think if I had been asked at the time that this application was filed to prepare thiamin mononitrate I would have come up with it in very short order. I was confident that such a compound was capable of existence and could be made.

"Q. With little difficulty? A. Yes."